UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EDWIN A. HERNANDEZ-HERNANDEZ,

    Petitioner,

v.

THOMAS E. FEELEY, *in his official capacity as Field Office Director, Buffalo Field Office, U.S. Immigration & Customs Enforcement*, *et al.*,

    Respondents.

**DECISION AND ORDER**

1:20-CV-01161 EAW

---

## INTRODUCTION

Petitioner Edwin A. Hernandez-Hernandez ("Petitioner"), an immigration detainee currently detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner argues that his continued detention violates his rights to both substantive and procedural due process, and seeks immediate release under appropriate conditions of supervision or, in the alternative, a bond hearing with appropriate procedural protections. For the reasons set forth below, the Court denies the petition without prejudice, on the basis that (1) Petitioner's request for a bond hearing has been mooted and (2) Petitioner has failed to exhaust his administrative remedies with respect to his request for immediate release.

## BACKGROUND

Petitioner is a native and citizen of El Salvador. (Dkt. 8-1 at ¶ 5). On or about June 23, 2015, when he was 16 years old, Petitioner unlawfully crossed the border between the

United States and Mexico as an unaccompanied minor. (*Id*.). Petitioner was taken into custody and interviewed. (*Id*. at ¶ 6). Petitioner reported that he had an uncle who lived at an unknown address in Houston, Texas, and provided a phone number. (*Id*. at ¶ 7). Attempts to reach Petitioner's uncle at that phone number were unsuccessful. (*Id*.).

On June 23, 2015, a Notice of Custody Determination was issued to Petitioner informing him that he would be held in detention pending a final determination in his immigration proceedings. (*Id*. at ¶ 10). Petitioner requested that an immigration judge ("IJ") review the determination. (*Id*.).

A master calendar hearing was held on March 2, 2016. (*Id*. at ¶¶ 14-15). Petitioner appeared with counsel and requested an adjournment until September 7, 2016, to allow for preparation of applications for asylum and Special Immigrant Juvenile classification. (*Id*. at ¶ 15). The request was granted, but the adjourned hearing was subsequently rescheduled from September 7, 2016, first to December 7, 2016, then to March 1, 2017, and finally to March 8, 2017. (*Id*. at ¶¶ 15-16, 18, 24).

Through December 19, 2016, Petitioner was in the custody of the Office of Refugee Resettlement ("ORR"), which is an agency within the United States Department of Health and Human Services. (*Id*. at ¶ 13). While in ORR custody, Petitioner admitted to being an associate of Mara Salvatrucha, "an international criminal gang commonly known as MS-13." (*Id*. at ¶ 19). Petitioner reported having participated in five murders while a member of the gang. (*Id*.).

The Department of Homeland Security ("DHS") took custody of Petitioner upon his release from ORR. (*Id*. at ¶ 22). Another custody determination was made, and Petitioner

was again advised that he would remain in custody pending a final determination in his removal proceedings. (*Id*.). Petitioner again requested IJ review of the custody determination. (*Id*.).

On March 7, 2017, United States Citizenship and Immigration Services ("USCIS") advised Petitioner by letter than he was not eligible for asylum because he had not established past or future persecution, but further advised that he could still request asylum before an IJ during his immigration proceedings. (*Id*. at ¶ 25).

At Petitioner's request, his individual hearing was rescheduled to May 12, 2017. (*Id*. at ¶ 26). A subsequent request for a continuance by Petitioner was denied on April 21, 2017. (*Id*.). However, on May 12, 2017, the IJ ordered that venue be transferred, and Petitioner's hearing was rescheduled for June 5, 2017, in Batavia. (*Id*. at ¶ 27). Then, on June 5, 2017, Petitioner's hearing was rescheduled to October 12, 2017. (*Id*. at ¶ 28).

Petitioner's hearing went forward on October 12, 2017, and opening statements were made and testimony was taken. (*Id*. at ¶ 32). The hearing was continued to November 15, 2017, at which time additional expert testimony was taken, the parties made their closing arguments, and the IJ reserved decision. (*Id*. at ¶¶ 32-33).

On December 21, 2017, the IJ issued a decision denying Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture, and ordering Petitioner removed. (*Id*. at ¶ 34). Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on June 18, 2018. (*Id*. at ¶¶ 35, 37). On June 28, 2018, Petitioner filed a Petition for Review ("PFR") in the

United States Court of Appeals for the Second Circuit, as well as a motion to stay his removal.  (*Id*. at ¶ 38).

Petitioner's custody status was periodically reviewed, and he was advised on September 10, 2018, December 19, 2018, April 4, 2019, and June 24, 2019, that his custody would be continued due to his criminal history.  (*Id*. at ¶¶ 39-43, 47).

United States Immigration and Customs Enforcement ("ICE") attempted to obtain travel documents to effect Petitioner's removal to El Salvador in the event that his PFR was denied.  (*Id*. at ¶ 44).  However, Petitioner repeatedly refused to speak with the consulate of El Salvador, resulting in the issuance of a Form I-299(a) Warning for Failure to Depart on July 15, 2019, advising Petitioner of his obligation to assist in his removal.  (*Id*. at ¶¶ 45-49).  Petitioner continued to refuse to speak to the consulate of El Salvador, resulting in the issuance of a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g) on August 12, 2019.  (*Id*. at ¶¶ 50-52).

Petitioner's immigration proceedings were remanded to the BIA by the Second Circuit.  (*Id*. at ¶ 54).  Specifically, on October 24, 2019, the Second Circuit issued a decision granting the PFR because: (1)  the BIA failed to adequately consider whether Petitioner qualified for the duress exception to the bar on asylum and withholding of removal for individuals who committed serious nonpolitical crimes; (2) the IJ failed to adequately explain why MS-13 is not a de facto state actor; (3) the IJ applied the incorrect legal standard regarding governmental acquiescence under the Convention Against Torture; and (4) the IJ "overlooked the relevant fact that upon [Petitioner's] removal, the

U.S. government will inform the Salvadoran government of his former gang affiliation." *Hernandez-Hernandez v. Barr*, 789 F. App'x 898, 900-02 (2d Cir. 2019).

Petitioner was advised of the remand on November 1, 2019. (Dkt. 8-1 at ¶ 54). Petitioner again requested release, but was advised that his request had been denied on April 24, 2020, "because ICE was not convinced that [he] was not a flight risk and was not a danger to the community." (*Id.* at ¶ 55). On May 1, 2020, an IJ issued a decision finding that Petitioner "was detained as a criminal alien due to his admissions of committing numerous crimes involving moral turpitude" and denying bond. (*Id.* at ¶ 56). Petitioner appealed the IJ's denial of bond to the BIA. (*Id.* at ¶ 57).

On June 4, 2020, the BIA remanded the record to the IJ for further proceedings as to Petitioner's application for protection from removal under the CAT. (*Id.* at ¶ 58). Testimony was taken and further briefing was ordered. (*Id.* at ¶¶ 59-60). The record before the Court does not reflect any further developments in the merits determinations on Petitioner's application for protection from removal.

The BIA sustained Petitioner's appeal of the IJ's bond denial. (Dkt. 17 at 15 n.2). On March 15, 2021, Petitioner appeared before an IJ for a bond hearing. (Dkt. 19 at 1). On March 17, 2021, the IJ issued a written decision in which she found the following: (1) Petitioner is not inadmissible for a conviction or admission to committing a crime of moral turpitude and is accordingly detained pursuant to 28 U.S.C. § 1226(a) and not 28 U.S.C. § 1226(c)[1]; (2) because he is detained pursuant to § 1226(a), Petitioner was entitled,

---

[1] "[T]here are two distinct provisions governing an alien's detention while removal proceedings are pending. The first provision—8 U.S.C. § 1226(a)—provides for

pursuant to this Court's decision in *Onosamba-Ohindo v. Barr*, 483 F.Supp.3d 159 (W.D.N.Y. Sept. 2, 2020), to a bond hearing at which the government bears the burden of proving by clear and convincing evidence that he is either a danger to the community or a risk of flight; (3) the government had not met its burden of showing by clear and convincing evidence that Petitioner was a danger to the community but had shown by clear and convincing evidence that Petitioner was a flight risk, based on his lack of any ties to or family in the United States, the uncertainty in the status of his application, and his having stated in the past that he would "rather die than go back to El Salvador"; (4) the government had not met its burden of showing by clear and convincing evidence that no amount of bond could mitigate the risk of flight or that alternatives to detention could not mitigate the substantial risk of flight posed by Petitioner; and (5) taking into account Petitioner's ability to pay and alternative conditions to release, Petitioner would be released on $60,000 bond and would be required to enroll in "a supervision requirement and/or an ankle monitoring." (Dkt. 19 at 4-8).

DHS appealed the IJ's bond decision to the BIA. (Dkt. 20 at 4-13). The record before the Court does not reflect any decision by the BIA on that appeal.

---

discretionary detention during removal proceedings subject to an individualized bond hearing. Under the second provision—8 U.S.C. § 1226(c)—which is entitled 'Detention of criminal aliens,' aliens falling within certain enumerated categories 'shall' be mandatorily detained without a hearing." *Nguti v. Sessions*, 259 F. Supp. 3d 6, 9-10 (W.D.N.Y. 2017) (quotations, citations, and original alteration omitted).

# DISCUSSION

## I. Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

## II. Petitioner's Claims

Petitioner asserts that his continuing detention violations his rights to both procedural and substantive due process. For the reasons set forth below, the Court finds denial of these claims without prejudice is required.

### A. Procedural Due Process

As the procedural history set forth above reflects, there is a dispute in this matter as to whether Petitioner is detained pursuant to § 1226(a) or § 1226(c). However, this Court

need not resolve that dispute, because regardless of the statutory provision pursuant to which he is detained, Petitioner has received all the procedure to which he could potentially be entitled, and his procedural due process claim has accordingly been rendered moot.

In *Onosamba-Ohindo*, this Court held that individuals detained pursuant to § 1226(a) have a procedural due process right to a bond hearing at which the government bears the burden of demonstrating dangerousness or risk of flight by clear and convincing evidence and at which the IJ considers ability to pay and alternative conditions of release in setting bond. 483 F. Supp. 3d at 183-84. Similarly, the Court has found that individuals held pursuant to § 1226(c) are entitled to an individualized bond hearing with the same procedural protections when their detention has become unreasonably prolonged. *See, e.g., Concepcion v. Barr*, No. 6:20-CV-06080 EAW, 2021 WL 202680, at *8 (W.D.N.Y. Jan. 21, 2021).

Here, in March of 2021 (after the petition was filed), Petitioner received a bond hearing at which the IJ expressly held the government to the clear and convincing evidence standard and considered alternative conditions and Petitioner's ability to pay in setting bond. (Dkt. 19 at 4-8). Thus, Petitioner has received precisely the process that the Court has previously found the Constitution requires. Although Petitioner has made a cursory contention that the amount of bond set by the IJ was "exorbitant and arbitrary" (*id*. at 1), he has not offered any supporting arguments for that contention, and it is not the role of this Court to independently reweigh the evidence considered by the IJ in making her determination. *See Blandon v. Barr*, 434 F. Supp. 3d 30, 36 (W.D.N.Y. 2020) (while the Court may consider whether the IJ complied with the Court-ordered procedural protections,

it does not reweigh the evidence nor consider whether it would made the same determination as the IJ). To be clear, the Court is not suggesting that judicial relief is never available to challenge the conditions of release set at a bond hearing, but on the record before the Court, Petitioner's argument in this regard is cursory and, thus, there is simply no live controversy regarding the procedural protections afforded to Petitioner[2], and Petitioner's procedural due process claim is accordingly denied without prejudice as moot.

**B.     Substantive Due Process**

"[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty v. Thornburgh*, 943 F.2d 204, 209 (1991). "It is axiomatic, however, that an alien's right to be at liberty during the course of deportation proceedings is circumscribed by considerations of the national interest." *Id.* If the infringement on an alien's "liberty interest results from a proper exercise of discretion," then a prolonged detention "is not conduct that goes beyond the range of government activity permitted by the Constitution." *Id.* at 211. However, "[i]mmigration detainees can establish a [substantive] due process violation for unconstitutional conditions of

---

[2]      Petitioner has filed a letter in which he states that "[d]espite being afforded a bond hearing, Petitioner contends that his Petition for habeas corpus is still live. Petitioner primarily requested immediate release under reasonable conditions of supervision, and Petitioner has not received that relief." (Dkt. 19 at 1). The Court understands Petitioner to be arguing that his petition still presents a live controversy because he has argued that his continued detention violates his right to substantive due process regardless of the procedural protections provided and that he accordingly is entitled to immediate release on appropriate conditions. The Court addresses Petitioner's substantive due process claim below. To the extent Petitioner is contending that he has a viable procedural due process claim despite having been afforded a bond hearing pursuant to *Onosamba-Ohindo*, the Court disagrees, for the reasons set forth above.

confinement by showing that a government official 'knew, or should have known' of a condition that 'posed an excessive risk to health,' and failed to take appropriate action." *Basank v. Decker*, 449 F. Supp. 3d 205, 214 (S.D.N.Y. 2020) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017))[3]. As another court in this Circuit has explained:

> a petitioner establishes a claim for deliberate indifference by "prov[ing] that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."

*Coronel v. Decker*, 449 F. Supp. 3d 274, 284 (S.D.N.Y. 2020) (alteration in original and quoting *Darnell*, 849 F.3d at 35).

Here, Petitioner contends that "the conditions he has endured during his five-year detention constitute unconstitutional punitive detention" and seeks release on appropriate conditions as a result. (Dkt. 1-1 at 13). However, as Respondents point out in opposition to the petition, Petitioner has not exhausted his administrative remedies with respect to his request for release. At this point in time, as set forth above, Petitioner has actually been granted bond by an IJ, and the BIA's review of the IJ's decision is ongoing.

---

[3] On February 8, 2021, the Court ordered the parties to submit supplemental briefing as to whether Petitioner had ever effected a legal entry into the United States and, if he had not, the impact of his status as on the threshold of initial entry on his conditions of confinement claim. (Dkt. 15). The government's supplemental submission contended that it was unclear whether Petitioner's placement in ORR custody constituted an entry into this country, but conceded that in any event, Petitioner would have the right to challenge the conditions of his confinement. (Dkt. 16).

"A habeas petitioner must normally exhaust administrative remedies before seeking federal court intervention." *Michalski v. Decker*, 279 F. Supp.3d 487, 495 (S.D.N.Y. 2018). Although there is no statutory exhaustion requirement for a habeas petition brought by a civil immigration detainee, "courts have generally required exhaustion as a prudential matter." *Hossain v. Barr*, No. 6:19-CV-06389-MAT, 2019 WL 5964678, at *3 (W.D.N.Y. Nov. 13, 2019) (quotation omitted). The Court will waive the prudential exhaustion requirement where "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (quotation omitted). However, "[e]xhaustion is the rule, waiver the exception." *Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir. 1992).

This Court has previously found that the prudential exhaustion requirement should be waived where the issue before it is the standard of proof to be applied at a bond hearing, holding that "the available administrative remedies provide no genuine opportunity for adequate relief because the burden of proof the IJ would use at a bond hearing in the absence of an order from this Court does not comply with due process." *Blandon v. Barr*, No. 6:18-CV-06941 EAW, 2019 WL 7759228, at *4 (W.D.N.Y. Oct. 28, 2019). Other judges in this District have agreed. *See, e.g., Lopez v. Barr,* 458 F. Supp. 3d 171, 176 (W.D.N.Y. 2020) ("The Court will not require exhaustion here. Lopez's petition argues that § 1226(a) and the Constitution require the government to bear the burden of proof during a bond hearing. Such statutory and constitutional questions cannot be decided by an

immigration judge or the BIA, and accordingly Lopez was not required to exhaust his administrative remedies before bringing this claim in federal court." (quotation and alterations omitted)).  The Court continues to be of the view that where a constitutionally inadequate bond hearing (or no bond hearing at all) has been provided, prudential exhaustion is generally not required.

Here, however, the issue is not the burden of proof to be applied at a bond hearing nor whether such a hearing should be provided—to the contrary, as set forth above, Petitioner's use of his available administrative remedies has already resulted in his receipt of a bond hearing at which the required procedural protections were provided.  Instead, the only issue remaining before the Court is whether Petitioner should be released from custody.  On these unusual facts, none of the exceptions to prudential exhaustion apply.

First, the available administrative remedies provide a genuine opportunity for relief, in that if the BIA upholds the IJ's decision, Petitioner will be immediately eligible for release on bond.  As previously discussed, this fact distinguishes the instant matter from cases in which the only potential administrative relief was an additional bond hearing with an incorrect burden of proof applied.

Second, Petitioner has made no showing of irreparable harm without immediate judicial release.  In this regard, there is "much authority foreclosing" the argument that continued detention, standing alone, is insufficient to constitute irreparable harm.  *Hossain*, 2019 WL 5964678, at *5 (quotation omitted); *see also Roman v. Decker*, No. 20-CV-3752 (JGK), 2020 WL 4273823, at *7 (S.D.N.Y. July 24, 2020) ("The risk of prolonged detention does not constitute an irreparable injury that excuses the prudential exhaustion

requirement."); *Dembele v. Decker*, No. 18-CV-5070 (JPO), 2018 WL 4960234, at *3 (S.D.N.Y. Oct. 9, 2018) ("[I]t is well established that continued detention, standing alone, is insufficient to qualify as irreparable injury justifying non-exhaustion." (quotations omitted)). Moreover, while Petitioner has identified past purported failures to provide appropriate medical treatment, the record before the Court does not support the conclusion that those claimed failures exist now or that Petitioner's health is in immediate danger.

Third, administrative appeal clearly is not futile inasmuch as Petitioner will immediately be eligible for release without another bond hearing if the IJ's determination is sustained on appeal. *See Torres v. Decker*, No. 18-CV-10026 (VEC), 2018 WL 6649609, at *3 (S.D.N.Y. Dec. 19, 2018) (finding futility exception to prudential exhaustion requirement not satisfied because "it is . . . possible that Petitioner will get the relief he really wants—release on bond pending resolution of his removal proceedings—if his administrative appeal is successful"); *cf. Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6075067, at *6 (S.D.N.Y. Nov. 21, 2018) (finding futility exception established where "[t]he two remedies Petitioner seeks in the alternative from this Court—immediate release without another bond hearing or a supplemental bond hearing with the burden of proof on the Government—are foreclosed at the BIA based on existing administrative precedent"). The Court notes that while Petitioner has complained that the amount of bond required by the IJ is "exorbitant" (Dkt. 19 at 1), he has not indicated that he lacks access to the resources necessary to pay it.

Finally, while Petitioner has presented a constitutional question, "[m]ere existence of a constitutional issue . . . does not create an automatic exception to an exhaustion

requirement." *Monterosa v. Decker*, No. 1:20-CV-02653-MKV, 2020 WL 1847771, at *5 (S.D.N.Y. Apr. 11, 2020). "[T]he purpose of the exhaustion requirement is to facilitate administrative resolution of issues that might render judicial review unnecessary." *Roman*, 2020 WL 4273823, at *7 (S.D.N.Y. July 24, 2020) (quotation omitted). Accordingly, "[c]ourts will endeavor to avoid deciding a constitutional issue if the case might be resolved on a narrower factual basis." *Id.* (quoting *Monterosa*, 2020 WL 1847771, at *5). In other words, "[b]ecause the petitioner's claims can be mooted by the possibility of the petitioner's being released on bond after exhausting his administrative remedies, the petitioner has failed to show that the fourth exception to the prudential exhaustion requirement applies." *Id.*; *see also Monterosa*, 2020 WL 1847771, at *5 ("[T]he 'constitutional question' exception to prudential exhaustion does not apply here for the reasons discussed above—namely, that answering the constitutional questions may be entirely unnecessary if the BIA were to decide to release Monterosa based on the evidentiary record.").

Of course, in the event that the BIA reverses the IJ's bond decision or Petitioner is otherwise unable to secure his release on the completion of his administrative proceedings, Petitioner can bring another habeas petition. *See Michalski*, 279 F.Supp.3d at 497 ("[I]f Michalski remains detained as a result of his bond hearing and any appeal to the Board of Immigration Appeals, he may file another habeas petition.").

## **CONCLUSION**

For the foregoing reasons, the petition (Dkt. 1) is denied and dismissed without prejudice. The Clerk of Court is instructed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:	April 21, 2021
	Rochester, New York